Good morning. Welcome to Thursday of this week's sitting. Glad to have you here. I will just give you a couple of rules of the road before we get started. Number one, please know that we have read your briefs. The case is undermining the statute, the record and materials. We understand the case. So please, in the time you have before us, don't waste your breath with a bunch of factual and procedural ramp-up. Just go right to the issues you think drive the decision in your favor. Two, you'll understand traffic light systems we have here. Green, yellow, slow down, red, ideally stop. I've said it the last two days and it remains true today. I'm not the kind of guy who's going to cut you off in the middle of a syllable. But I will ask you to begin to ramp up. And if, please, at least our body language, if we were hanging on tongue inside of cheeky, that's your indication you should be. Okay, great. Well, that's all the first case. 22-3434, J & J Sports v. Los Ranchos. Counsel for that case can approach. Oh, very well. Sorry, I forgot about that. No need to approach. Very well. We have Mr. Martin here for the appellate. Mr. Kuchnider here for the appellate. Mr. Martin, are you ready? Mr. Martin, are you ready? Thank you. My name is David Martin and I represent the appellate Los Ranchos Latinos. May it please the court. Today we're here to speak about what I consider to be two general themes. The first is how does a federal court interpret and apply state law? Mr. Martin, can I ask you to hang on just a second? We're getting some weird feedback here. Could I ask the counsel for appellate, perhaps, to mute his phone and see if that will solve the problem? All right, Brian, let's restart our clock. Still there. Yeah, give us a second, guys. I'm sorry. Mr. Martin, are we going to let you start our reverberator? Mr. Martin, are we going to let you start our reverberator? Yeah, I was hearing an echo. That sounds better. I hear myself echoing. Yeah, I feel like it's us. All right, Mr. Martin, let me just say something and see if you can hear it. It's better, not ideal, but better. I don't hear an echo on my end. Okay, good. Well, you're most important. Mr. Martin, we're going to reset the clock to start over. Thank you so much. Again, David Martin for appellate. I believe that we're here to address two fundamental issues in this case. The first is, how does a federal court interpret and apply state law when it applies in federal proceedings? And the second theme is, to what extent does the adversarial system of justice in this country prevent a federal court from stepping in and helping the other side? Regarding the first thing, we're dealing with a somewhat arcane Georgia statutory regime involving the revival of a civil judgment known as Shire Fascist. I don't know that there is a consensus on how that's pronounced, so I may refer to it here today as a sci-fi proceeding or the sci-fi regime. Mr. Martin, can I ask you a question just to kind of kick us off here? Is your contention that there was a failure here to abide by sort of every jot and tittle of Georgia Shire Fascist procedure? Do you dispute the notion that substantial compliance is good enough? I do dispute that substantial compliance is good enough in this case. So let me just ask you to focus on a couple of things. One, Georgia Code 1-3-1 provides that even as a matter of state law, substantial compliance with the procedural requirement is good enough unless otherwise expressly provided. Why does that, as a matter of state law, suggest that substantial compliance is good enough, setting aside what the phrase works with in Rule 69 might mean or the flexibility that Rule 81 seems to provide? That is correct, Your Honor. 1-3-1C refers to the rule of statutory construction, which only requires substantial compliance. But that rule does not come into play when the statute is clear and unequivocal. And I can cite to you a Georgia Supreme Court case, that's Cook v. NC2, L.P., that's 289 Georgia, 462. That's a 2011 Georgia Supreme Court decision. So that rule of substantial compliance is not applicable when the statute is clear and unequivocal. And here, the requirements of the CIFA regime concerning how it's presented and what it must contain are specific and detailed in the statute. Mr. Martin, let me ask you a question in light of your response. Why wasn't any divisions with J&J's initial filing cured when the district court ordered J&J to personally serve the motion and court order on Rose Rancho's and J&J did so? Well, the curing acts were not done by J&J. They were done by district court. But they did it. That's correct. They did do it over our objections in violation of the party presentation principle. But the party presentation principle was not a minor issue. It's very flexible. The district court didn't cause this motion in order to be served on you. And so, is your only argument that that didn't cure it? Your resort to the party presentation principle? Well, I think that the district court was required to rule on the revival motion as it stood within the four corners of that motion after our initial reply. So, can I ask you about that? Because what the party presentation principle seems to suggest is that the court cannot on its own bring up legal issues. In other words, if an issue has not been raised by a party, a court can't on its own do that. But the corollary to that is when an issue has been raised, the court is not obligated to get the law wrong. In fact, the duty of the court is to get the law exactly right when it's been raised. Here, it seems to me that the issue of whether, I'll call it sci-fi or however we're calling it, that the issue of whether the judge was entitled to the writ in this case was properly raised, and that it was incumbent upon the Georgia court, I'm sorry, the district court, to get Georgia law right at that point. Is that not consistent with my understanding of the party presentation principle, inconsistent with what we said in Campbell and other cases? I think it is because the district court did more than modestly intercede. It amended the plaintiff's motion to revive the judgment. The motion didn't even identify an existing judgment in this case. The district court only identified not only one but two judgments. It specifically told the plaintiff how and by when to serve the papers. None of these remedies or reliefs were requested by the plaintiff. Mr. Martin, I'm going to ask you to stop. And I think that this is indistinguishable except for the fact that it's in federal court from the controlling Popham v. Jordan case that I've cited in our briefing. That's a 2006 Georgia court of appeals case where the plaintiff submitted a deficient petition under sci-fi that didn't meet the requirements of the statute. Mr. Martin, you hear us. The trial judge just denied it and the court of appeals simply affirmed. That's what should have happened. I'm sorry, Mr. Martin. If you can hear me now, we're having further technical difficulties. Sorry, I'm not hearing anything. Did the microphones go out? I'm sorry, I'm not hearing. I'm so sorry. I think I hear a voice but it's very distant. Mr. Martin, can you hear us? There we go. Now I can hear you. Okay. Let's try. We'll try again. Feel free to rewind, Mr. Martin, what you were just telling us because you couldn't hear us interjecting. But before you start, Judge Brant, I have a question for you. You said in your response that J&J did not identify an order. That's not correct. J&J did identify an order. It had the wrong date and the judge corrected that as a scrivener's error. Correct. Well, I don't think that they referred to a scrivener's error ever in the initial filings in the trial judge and district court. There was the initial motion. There was my response and there was no reply. And what I was objecting to was the fact that they had identified a judgment. I think it's a July 14, 2014 date. And I pointed to it and say that judgment does not exist. And if the panel will recall, this particular plaintiff obtained multiple judgments against my client in five different cases. Let me ask you this as a corollary to Judge Luck's question about the party presentation principle. It seems to me there are a few different party presentation arguments that you're making before us. One is about the date that you've been discussing with Judge Brant. Another is about, you know, sort of the series of orders that you say the district court issued in order to sort of effect proper service. And the other is whether or not you properly construed the requested relief, the motion. Did you make – my reading of that is that the only party presentation argument that you made in the district court was with respect to the date. Are there other party presentation arguments that are live before us? Yes. With regard to the initial revival motion itself, it didn't resemble a summons, which is one of the requirements under POPM v. Jordan. It was mailed by certified mail. And under the Atwood case, personal service by a sheriff is required. And there's also a 20-day minimum hearing notice. And so I objected to the form and substance of the entire initial revival motion. And it was after that that there was no reply. There was no request to amend. And it was, again, the district court that recast the entire revival motion and issued an order that was never requested requiring my client to show cause as it would have if a proper sci-fi petition had been presented. What do you make, though, and, like, again, to follow on Judge Luck's question about the obligation of the court to get the law right, what do you make of the fact there's this footnote in the district court's opinion where it seems to me the district judge basically says, look, I get it that I'm doing this a little bit differently than I did last time. The reason is because my thinking on these issues has evolved. What's wrong with that? He's trying to get closer to, right? It seems to me the last time it was more sort of summary justice. This time he's trying to get closer to substantial compliance with Georgia sci-fi procedure. It seems like no good deed is going unpunished here. I see that my time's almost up. If I may answer your question. Please. Yes. I believe that getting the law right here required that the district court simply deny, having denied the revival motion in the first instance so that the June 22, 2022 order, I think that's docket number 18, should have been a simple denial because it didn't meet the statutory requirements of the sci-fi. All the other cases that have been cited from the northern district and bankruptcy courts in Georgia, to my knowledge, all involved uncontested cases where there really wasn't an adversary process to bring these issues into sharp relief. Okay. Very well. Thank you, Mr. Martin, for your patience. I'm very sorry for the technical difficulties. If you need a little bit of extra time and rebuttal, I'm happy to give it to you. Thank you, Your Honor. All right, Mr. Ream-Snyder, let's hear from you. May it please the court, this is Ron Ream-Snyder, attorney for J&J. This case, in my view, puts before the court two opposing and really starkly different approaches to the application of the federal rules of civil procedure. When there is an error in a motion of brief, which the trial court notes and corrects and provides notice and opportunity to be heard to the other side, in my view, J&J has a contemporary view that the federal rules, as per Rule 1, should be construed to secure the just, speedy, and inexpensive determination of actions. A fundamental way to provide this, of course, is to provide notice and opportunity to be heard. Bose-Rancho's has a more regressive view where notice, actual notice, opportunity to be heard, are secondary in the event of an incorrect date in the pleading. The appellant wants us to return to demurs, where form is more valuable and more important than substance. And I urge you not to take this step back. Mr. Ream-Snyder, let me follow up on a question that I asked Mr. Martin. So it is true, in fact, that the district court ordered J&J to serve the motion and the Sy-Fay-like order on Los Ranchos. But at that time, at time the service was made, it was nearly 10 months past the three-year limit for reviving a dormant judgment under Georgia law. What effect, if anything, does that out-of-time cause? Nothing. I believe the key date is the date of the filing of the motion, which was, if I remember correctly, was five or six weeks prior to the expiration of the statute. What is the rule that we're required to follow, counsel? Is it substantial compliance or actual to the letter, the jot and tittle, as my colleague said, of each provision of the relevant statute under Georgia law? Yeah. As covered in J&J's brief, we believe it is substantial compliance. Where do you get that? It is very unfortunate. Where do we get that from? I know we have not said that in any of our cases. Where would we get authority for that proposition? I don't have the citations in my head, judges, but the citations are in our brief where such holdings have been made by other federal courts. And, of course, the citation you had earlier, the Georgia law, requires substantial compliance. And I think it's unfortunate that there is no federal law that deals with how to revive in a federal court, a state court judgment. We have this odd hybrid, which doesn't really clearly tell the parties how to do anything. For example, we first served by certified mail, which up until Judge Jones' second ruling in our case had been the way judgments had been revived for years. And then Judge Jones noted, as you noted, that his thinking had evolved. And although Los Ranchos had actual notice by certified mail, and Mr. Martin appeared in response to the certified mail service, the court wanted us to do personal service. So in what we thought was substantial compliance with Georgia law, we serve via process server. Every county has authorized process servers, which are used regularly in state court cases. Let me ask you a quick question. I want to make sure that Judge Luck gets an answer to his question. Setting aside Georgia Code 1-3-1 sub c that I cited earlier, and I'm going to take a look at the case that Mr. Martin directed me to. So let's assume that 1-3-1 sub c doesn't get it done for substantial compliance. Where does substantial compliance come from on the federal side? I recognize that there are other courts that have said so. And based on what? And I guess more specifically, Rule 69 comes pretty close to, it's not specifically about revival, but it is about proceeding supplementary to and in aid of execution. And it says that procedures should accord with those in state court. So what does the word accord mean? Does that mean every judgment system has substantial compliance? No, to me it means substantial compliance. And then also from memory, if my memory is correct, the last sentence of that paragraph also has to do with some recognition of the application of federal law. And I frankly think that you should be able to do in a federal court, since side phase we've been calling it has been abolished, you should be able to file a revival action by motion, which is the new rule. And motions in federal court, Rule 4, can be served by mail. But we said, no, let's look at Georgia law for that. Well, there's no clear guidance to litigants about where the enmeshing is and what controls. I think a federal court would be within its bounds to say, in our court, motions are filed by mail. And that's the end of it. Counsel, let me ask you this. Let's assume it's a jot and tittle rule, that Rule 69 requires or in accord means that we have to follow, to the letter, to the number, all procedures of Georgia law or state law. So the relevant statute, it seems to me, is 91263 here. That's what sets out the procedure. Does that rule state anything about the nature of the initial request that is made? So here you file the motion because the rules of federal procedure require that relief. I think it's Rule 7, requires relief be done in the form of a motion. But does Section 91263 of the Georgia Code state anything about the nature of the request that is made to start this process, to start the writ? Well, I've never filed a Georgia sci-fi action. But if I remember correctly, you go to the clerk of the county where the defendant resides or where the judgment was obtained, and then you have to get the writ from the clerk, and then the writ has to be served by the sheriff. That sounds exactly right to me. I think you just show up at the clerk's office and say, hey, clerk, there's a judgment in your books, and I'd like you to revive it. Can you issue me this writ so that I can serve it on the sheriff? It doesn't seem that there is a procedure that you have to go through to sort of start the ball rolling on this thing, right? No. Historically, I mean, I've done a fair number of these in federal court. We always did it by motion, served by mail. Then it was, you know, you need to serve personal, which is fine. I mean, litigants, knowing what the rules are, will generally try to follow the rules. Now, I admit in this instance, I screwed up and did not catch that the date was wrong. You know, that's on me. But I think we're losing focus of what the real issue is. The real issue is, was Los Salanchos prejudiced in any way by a judge correcting what was an obvious error? I mean, in Georgia, judgments can be renewed as a matter of right. The only defense, the only substantive defense is payment. There was no payment. This is, as you say, a dot and tittle case. The court noted that the date was wrong, corrected that, required personal service, which was made by mail, by marshal, by process server, multiple times. There's no way that this defendant didn't get the opportunity to participate in a fair judicial proceeding. And they just simply did not have a defense other than to say, oh, wait a minute, the initial pleading had the wrong date. That, to me, is more prejudicial to a judgment holder than allowing the district court to correct by judicial notice an error in a judgment that it itself issued several years before. So, my point is, I guess, in summary, because I don't want to belabor this, but every party, of course, deserves notice of opportunity to be heard. That was present here. I don't think we should take a step back to demurral pleading, where if there is an error in a pleading, the court can't take judicial notice. As you pointed out, to make sure that the process is done fairly. And also, I will say, as a practical matter, it's difficult when there's no clear delineation between which federal civil procedure methods apply and state court methods apply. How to anticipate what future rulings may be. All we could do was act as we had in the past, starting out with a motion, then using a process server, which is permitted under state law, and then finally doing it by the sheriff. But none of that was done to prejudice Los Ranchos. It was done simply to find a way through the haze of which part of federal law and which part of state law applies. And I don't want to get repetitive, so I think I can simply end that by saying that, you know, I confess the error. I botched the date. But that was caught and corrected without any prejudice in any way to Los Ranchos. And I don't believe that, in this instance, justice would be served by the dot and tittle application of the federal rules. We substantially complied in every way with giving the defendant full notice and opportunity to be heard. If I respond to any questions otherwise, you know the rest of my time at this point. Okay, thank you very much, Mr. Ream-Snyder. Mr. Martin, let's hear from you in rebuttal. Yes, Your Honor. Regarding the jot and tittle language, I believe that's drawn from a Seventh Circuit case from 1993 called RTC v. Ruggiero. That's a very wise opinion by Judge Posner, whom I admire greatly. That case was decided under Illinois law concerning the imposition of a resulting trust under Illinois law. And if you read that opinion, the statutory language left most of the procedure to the discretion of the trial judge. And so substantial compliance was appropriate in that case, decided under Illinois law. In contrast, this case has a different statutory scheme. What does an accord mean? Counsel, what does an accord mean? That means to apply state law. Are you sure about that? Does it have to mean to apply state law in every jot and tittle? Well, I mean, you know, as I guess I want to do, I looked it up. And, you know, some of the definitions say things like consistent with, which might support your view. But some of them say things like harmonious with or in correspondence with, which seems to me to leave a little bit more play in the joints. Right. I would say to the extent the jots and the tittles are explicit in the statute, they must be observed and applied. So let's talk about that. That's a great point. So let's look at the statute I asked your colleague about, which was 9-12-63. Can you show me where it precludes a motion being filed in order to start the process with the court to issue the writ? Yes. It does not preclude a motion. Indeed, it contemplates some type of request to the court to issue the cipher. Right. And that's what happened here, right? They filed a motion with here the court rather than the clerk to issue, in order to show cause, essentially the writ, in order to be served then by sheriff on the party here, on the judgment debtor, right? No, I disagree with that. The motion didn't request an order that would then be served on my client to show cause. Show me where it says that there needs to be a request for the motion has to have certain things in it. Where is that in the rule? If we're going to do jot and tittle, then let's do it. But show me. I'm looking at the statute right now. Right. It's the 9-12-63. It's the same one I've mentioned three times now. I'm looking right at it. Show me. Right, right. You're getting that from a case. Let me be clear, Mr. Martin. You're getting it from a case, from a case called, I think it's Popham, that you read that case because a motion was done there to then say that must mean that there can't be a motion that has to be done through the procedure that Popham had talked about. But if you look at the statute itself, it says nothing about the nature of the request that has to be made. I think that comes out of the next section, 9-12-64. It's not explicit, but it provides that the defendant, after the syphe is served, is then allowed to, after it's perfected, then the plaintiff may move for a motion to revive the judgment. And then at that point, the defendant has the right to present an issuable defense. I don't read that. I have the statute right in front of me, too. It says that where, in all these cases, to revive judgments. When service has been perfected, in other words, after the sheriff has served the order, the judgment may be revived on motion at the first term within the intervention. So it's been served. We have our hearing. A motion can be made at that point to revive the judgment. That seems to be exactly what happened here. We weren't, again, we weren't served with a motion to show cause or resembling an order to show cause. And again, the application of Georgia appellate court decisions, I believe, is required under Rule 91, subsection D, which requires the application of state law. And also, there's another statute, and this is my fault that I didn't apply, and that's 28 U.S.C. 1652. I can quote from that as well. This is just the Rules of Decision Act that, like, sort of exists in Erie lands? Yes. Well, I think it goes beyond Erie because it requires, now, of course, just when I need it, I have misplaced. No, it's okay. I actually just, I pulled it up on my phone. I can read it to you. The laws of the several states, except where the Constitution or treaties of the United States or acts of Congress otherwise provide, shall be regarded as rules of decision and civil actions in the court of the United States in cases where they apply. Correct. And then, with respect to judgments specifically, there's 28 U.S.C. 1962, and that, again, is my fault, and I was only alerted to its existence because there's another case that's actually being argued today. It's the Hans Jergen case that's before another panel that's also dealing with Georgia sci-fi issues. But the first sentence of Section of 28 U.S.C. 1962, I think, also mandates that we follow the statutes on Georgia revival and also how the courts have interpreted those statutes. Let me ask you just a quick question. With respect to 1652, and I haven't thought very closely, very carefully about 1962, but with respect to 1652, in sort of the Supreme Court's eerie jurisprudence, hasn't the court said, in essence, that where a federal rule of civil procedure applies, then it governs? It sort of displaces eerie considerations. That's, I think, Shady Grove, cases like Shady Grove. And here, you've got two rules of federal civil procedure that seem to me, if not on point, highly informative, Rule 69 and 81. And unless you think that 69's accords with language requires the jot and tittle approach, then 69 and 81 together, 81 saying appropriate motion, seem to provide sufficient flexibility for a substantial compliance regime instead of a look-through to specifically the requirements of Georgia law. If I could comment first on Rule 81, I believe that's the sentence that abolishes the writ of sci-fi. Right. That's, for me, that abolished the writ of the federal sci-fi, which wasn't used only to revoke judgments. It had multiple uses, including, I believe, canceling letters patent, substituting a deceased party, recovering on a bail bond. Those were some of the remedies afforded under that federal writ, whereas the Georgia writ is specific to judgment revival. And under the rule of construction favoring the more specific provisions, I think we've got to abide by Georgia's regime. And Rule 81 really has very little impact on the analysis, in my opinion. Okay. Mr. Martin, I'm sorry we've carried you over. I think we will submit this case. But before I do so, I want to thank you for your service to the court, having taken this case pro bono. It's been an honor and a privilege. Thank you both very much. That case is submitted, and we'll move to the second case of the day.